Moncure, P.,
delivered the opinion of the court.
The subject of controversy in this case is the sum of $1,636.06, due by John S. Barbour, receiver of the Washington City, Virginia Midland and Great Southern railroad company, to the Alexandria and Fredericksburg Railway Company for trackage; that is to say, for the passage of trains of cars by said John S. Barbour, receiver as aforesaid, over that portion of the said Alexandria and Fredericksburg railway, which lies between the city of Alexandria and the southern end of the Long bridge, in the county of Alexandria.
The conflicting claimants of this fund are the appellants, Josiah Bacon and Strickland Eneass, substituted trustees under a deed of trust dated the 1st day of June, 1866, between the Alexandria and Fredericksburg Railway Company, a body corporate, chartered and organized by authority of the legislature of Virginia, of the first part, and D. Randolph Martin and Robert Turner, of the city of Lew York, of the second part, of-which *774 deed (which was duly recorded) an official copy is a part of the record in this case; and the appellee, J. I). Faunce, who, in November, 1878, recovered a judgment in the circuit court of the city of Alexandria against the Alexandria and - Fredericksburg Railway Company for the sum of $3,400, wfith interest thereon from the 22d day of November, 1873, until paid, and $87.29 costs, and thereupon sued out an execution of fieri facias on the said judgment, which was returned unsatisfied. On the 6th August, 1877, he caused an execution of fieri facias to be again issued upon said judgment and placed in the hands of the sergeant of the said city of Alexandria to be executed, and thereupon he caused a summons against the said receiver to be issued out of the clerk’s office of said court upon the suggestion of the said Faunce that by reason of the lien of his execution aforesaid there was a liability upon the said receiver.
The question in controversy between these conflicting claimants depends entirely upon the question whether that portion of the line of the Alexandria and Fredericksburg Railway Company, lying between the city of Alexandria and the southern end of the Long bridge, in the county of Alexandria, is or is not embraced in the deed of trust aforesaid, dated the 1st day of June, 1866. If it be so embraced, then the fund in controversy belongs to the said appellants, to be disposed of by them as substituted trustees under the said deed of trust. Rut if the said portion of the said line of the said railway be not so embraced, then the said fund belongs to the said appellee, Faunce, to he applied to the part payment of his said execution.
The court below, upon consideration of the controversy, being of opinion that the portion of the road of said Alexandria and Fredericksburg Railway Company between the city of Alexandria and the southern end of the Long bridge as aforesaid, is not embraced in the *775 said deed of 1866, decreed that John S. Barbour, receiver as aforesaid, pay over to the said Faunce, to he applied to the payment of his judgment aforesaid, the said sum of $1,636.06, the same being liable to the lien of the said execution. From that decree this appeal was taken, and the question now to be considered is, whether the said decree be erroneous or not.
• The original act of incorporation of the said Alexandria and Fredericksburg Railway Company was passed in the city of Alexandria by the general assembly of Virginia February 3d, 1864, and is entitled “ an act to incorporate a company to construct a railway from the city of Alexandria to connect with the Acquia Creek and Richmond railway.” See “ Virginia Acts of Assembly, 1861 to 1865.”
By the first section of said act provision was made for opening books in the city of Alexandria for the purpose of receiving subscriptions to an amount not exceeding $2,000,000 of capital stock, in shares of $100 each, for the purpose of surveying, locating, constructing and operating a railway from the terminus of the Washington, Alexandria and Georgetown railroad, m the city of Alexandria, to the most eligible point on the present railroad from Acquia creek to the city of Fredericksburg.
By the second, third, fourth and fifth sections it was enacted as follows:
“ § 2. That whenever 2,000 shares of said stock shall have been subscribed, and ten per cent, thereon paid in good faith, the subscribers, their successors, executors and assignees shall be and are hereby declared and constituted a body politic and corporate under the name and style of “ The Alexandria and Fredericksburg Railway Company,” and shall be subject to all the provisions of the Code of Vii'ginia applicable to such corporations: provided that the rates of charge *776 for tlie transportation of persons and property upon the said railroad to or from the city of Alexandria shall not he ratably other or higher than upon persons or property destined to any point north of said city..
“§ 3. That it shall be lawful for said company, for the purpose of constructing, equipping and operating said railway, to sell their bonds, with coupons attached, at the rate of interest not exceeding seven per centum per annum, to be paid semi-annually, to the amount of one million dollars, and also to borrow money upon their promissory notes duly executed under the authority of its board of directors, to an amount not exceeding $500,000.
“§4. Provided, that said company shall commence the construction of said 3’ailway within two years, and complete the same within five years from the passage of this act.
“ § 5. This act shall be in force from its passage.”
By deed of trust dated on the first day of June, 1866, between the Alexandria and- Fredericksburg Railway Company, of the first part, and D. Randolph Martin and Robert Turner, of the city of New York, of the second part, and duly recorded in the several counties in which the said railway is located, the said party of the first part conveyed to the said pai’ties of the second part “ all the railroad of the said party of the first part—that is to say, the said Alexandria and Fredericksburg railway, commencing at the terminus of the Washington, Alexandria and Georgetown railroad, in the city of Alexandria, state of Virginia, to the city of Fredericksburg, in said state, or to such point of junction with the Richmond, Fredericksburg and Potomac railroad, or the road, leading from Aquia creek to the city of Fredei’icksburg, at or near Brook’s station as now located, or to any other point of junction wdth the said Richmond, Fredericksburg and Potomac railroad which may in the future be adopted, including all and singular the franchises of *777 said railroad as now granted and chartered, and any and all amendments, additions or modifications thereof, together with all and singular, the rights, interests, property and estate, real, personal and mixed, acquired, or which may hereafter be acquired, constructed, or to be constructed, of every species, nature and kind whatsoever.” “In trust, nevertheless, for the use and purposes” declared in said deed, among which, mainly, is the security of the payment of the bonds to be executed and disposed of as therein provided for.
Broad as certainly are the terms of the said deed as to the subject intended to be conveyed, they do not embrace, and were obviously not intended to embrace, that part of the Alexandria and Fredericksburg railway now extending from Alexandria to the southern extremity of the Long bridge across the Potomac river opposite the city of Washington. That extension was not then made, and probably had not been thought of, and was not made nor authorized to be made for years thereafter. It was first authorized to be made four years thereafter, by an act approved June 4, 1870, entitled “an act to amend the charter of the Alexandria and Fredericksburg Bailway Company.” Acts of Assembly, 1869-70, p. 187.
By the first section of that act, the forfeiture of the charter of said company incurred by reason of its failure to complete said railway within the time specified in section 4 of its charter, is waived, and an extension of time for building said railway is granted, and the said company is “ authorized to extend said railway to a point on the Potomac river, between Alexandria and Washington city, or opposite Washington city, and to bridge said river so far as the state of Virginia can authorize the same, or to connect with the bridge of any railroad company that, may have been, or may hereafter be chartered by the *778 congress of the United States, whose road passes or shall pass through the District of Columbia: provided that in the extension of said railway it shall in no way interfere with the chartered rights or franchises of any railroad extending between Alexandria and "Washington; but this proviso shall not be Construed as preventing said Alexandria and Fredericksburg railway from crossing any such railroad.” By the second section of said act an option is given to the said railway company as to the point of connection of its road with the Richmond, Fredericksburg and Potomac railroad, north of Fredericksburg : “ provided that the said railway shall be constructed from its junction with” said railroad “to Alexandria, before its construction shall be commenced north of Alexandria.” By thethirdsection,thesecondsection ofthe said act of incorporation passed February 3, 1864, is amended, but the amendment need not be here set out.
Since the passage of the said act, approved June 4, 1870, it seems that the said railway has been connected with the said railroad as authorized by the said act, and has been constructed from its junction with said railroad to Alexandria, since which the extension of said railway beyond Alexandria to a point on the Potomac river, between Alexandria and Washington city, or opposite to Washington city, authorized by said act, has been accomplished.
Certainly the extension of the Alexandria and Fredericksburg railway from Alexandria to the southern end of the Long bridge across the Potomac river, opposite to Washington city, not having been made nor even contemplated at the time of the execution of the said deed of trust, dated the 1st day of June, 1866, was not embraced, nor intended to be embraced, as a part of the railway conveyed by that deed.
But it is contended for the appellants, that though not embraced as a part of the railway so conveyed, it is em *779 braced in the broad terms of that deed, which include “ all and singular the franchises of said railroad as now granted and chartered, and any and all amendments, additions or modifications thereof, together with all and singular the rights, interest, property and estate, real, personal or mixed, acquired, or which may be acquired, constructed, or to be constructed, of every species, nature and kind whatsoever.”
These are certainly very broad terms, but they were obviously intended to he confined to the railway as it then existed between the termini, plainly described in the deed, and the lateral branches of said railway which might thereafter be constructed by authority of law, together with the appurtenances then or thereafter existing to said railway so limited and its lateral branches aforesaid. In regard to such lateral branches, the Code, ch. 61, § 5, p. 573, declares that “the president and directors of any company incorporated to construct a railroad or other work of internal improvement, may cause to be made in connection therewith branch railroads or lateral works not exceeding two miles each in length; and under a resolution adopted in general meeting by two-thirds of all the votes of all the stockholders, may cause to be made branch railroads or lateral works not exceeding ten miles each in length.”
But, it is argued for the appellants, that under the power thus conferred to construct these lateral branches, this extension of the said railway from its terminus at Alexandria to the Long bridge as aforesaid, might have been, if it was not actually, constructed, and whether it was, in fact, so or not, the deed of trust aforesaid must be construed as if the said extension had been so constructed.
Certainly the said extension was not intended to be so constructed even if it had been lawful so to con *780 struct it. The act approved June 4th, 1870, amending the charter of the Alexandria and Fredericksburg Bail-way Company as aforesaid, expressly authorized the said extension to be made, and it was, in fact, made under that act, and not under the general provision in the Code in regard to branch railroads and lateral works as aforesaid. It is not pretended that there, was ever any resolution or vote of the stockholders, or even of the directors of the said railway company, to make any such extension, and it being more than two miles in length, even if it had been a branch or lateral road of the railway conveyed by said deed of trust, it could only have been authorized to be constructed as such “ under a resolution adopted in general meeting by two-thirds of all the votes of all the stockholders ” of said railway company. Code, p. 574, § 5.
But it was not a mere branch or lateral road of the said railway within the meaning of the said section of the Code, and could only have been authorized by another act of assembly, as it was by the act of June 4th, 1870, aforesaid. It was an extension of the said railway from its northern terminus at Alexandria to the southern end of the Long bridge across the Potomac river, opposite Washington city, which point thereafter became the northern terminus of the said railway, just as if it had been so named in the original charter, though such operation was prospective only, and not retrospective.
Suppose that the said railway company had effected the said extension of its railway from Alexandria to the Long bridge by borrowing money from a third person for that purpose and securing its repayment by a deed of trust on such extended road, could the validity of such an arrangement have been questioned? Could it have been said that the said deed of trust of the 1st of June, 1866, was a prior lien on the said extension, in the face *781 of the express terms of that deed limiting the road thereby intended to be conveyed and actually conveyed, to Alexandria as its northern terminus?
13ut it is said that the extension was made, not with money specially borrowed for the purpose and secured by a specific lien, but with money derived from the bondholders secured by the said deed of trust of the 1st of June, 1866. There is no evidence in the record of any such fact; and even if there had been, it'would have given to the said bondholders no specific lien on the said extended road for the security of the money expended in such extension. If they desired such security they ought to have required it, and had a deed of trust or ■mortgage on the said extended road executed and duly recorded for that purpose. ■ Hot having done so, and no deed of trust or mortgage on said extended road having been executed in their favor, they stand in regard to such extension merely as general creditors, without any specific lien thereon, and the appellee, Faunce, who was also a general creditor of the said railway compan j, having acquired a specific lien on and claim to the fund in controversy arising from the use of the said extended road, is entitled to the said fund in preference to the appellants.
Keliance is placed by the counsel for the appellants on ch. 61, § 44, page 686, of the Code, which is in these words: “If a sale be made under a deed of trust or mortgage executed by a company on all its works and property, and there be a conveyance pursuant thereto, such sale and conveyance shall pass to the purchaser at the sale, not only the works and proporty of the company as they, were at the time of making the deed of trust or mortgage, but any works which the company may, after that time ánd before the sale, have constructed, and all other property of which it may be possessed at *782 the time' of the sale, other than debts due to it. Upon such conveyance to the purchaser, the said company shall ipso fado he dissolved. And the said purchaser shall, forthwith be a corporation by any name •which may be set forth in the said conveyance, or in any writing signed by him and recorded in the court in which the conveyance shall be recorded.”
This section applies expressly and only to a sale under a deed of trust or mortgage by a company on all its works and property, and not merely on a specific part thereof; and the reference therein made to “any works which the company may, after that time and before the sale have constructed, and all other property of which it may he possessed at the time of the sale other than debts due to it,” applies only to “works” and “other property” appurtenant to the said “works and property” conveyed by the said deed of trust or mortgage and acquired according to law since its execution. The section, therefore, does not apply to a portion of the road not constructed nor authorized by law to be constructed until several years after the execution of the said deed of trust or mortgage.
As the portion of the road extending from Alexandria to the Long bridge constitutes, comparatively, a small portion of the whole railway, it seems that the trustees of the residue of said railway under the deed of trust aforesaid, have charge of the entire railway, and represent the company in regard to the same in this suit and otherwise. 33ut that fact alone does not give them, nor is there anything else, so far as the record shows, which gives them any right to the money in controversy to be applied to the purposes of the said deed of trust.
This case has been argued with very great ability by the counsel on both sides, w'ho cited many books in support of their respective views, w-hich books, however, in *783 our opinion, contain nothing in conflict with the views , -i we have expressed.
The court is therefore of opinion that there is no error in the decree appealed from, and that the same ought to be aflirmed.
Decree affirmed.